2022 IL App (2d) 210757
No. 2-21-0757
Opinion filed November 21, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 09-CF-1874 |
| MANUEL A. FLORES, | ) ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Presiding Justice Brennan and Justice Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Manuel A. Flores, appeals from the order of the circuit court of Lake County denying him leave to file his successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). He claims that his petition, which sought relief from his plea of guilty to aggravated arson (720 ILCS 5/20-1(a), 20-1.1(a)(2) (West 2008)), set forth a colorable claim of actual innocence. We conclude that the trial court properly denied defendant leave to file his petition. Therefore, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    In June 2009, the State brought a nine-count indictment against defendant and codefendants, Elver H. Hernandez (Elver) and Edwin J. Hernandez (Edwin). The counts alleged

that the three defendants threw an object containing a flammable substance at the Mundelein home of Virginia Estrada, causing a fire that damaged the house, killed Jorge Juarez, and injured Virginia Estrada and Virginia Juarez. Counts I through VI charged various theories of first-degree murder (*id.* § 9-1(a)(1)-(3)) based on Jorge Juarez's death. The intentional murder counts alleged transferred intent in that the defendants acted with the intent to kill Rafael Juarez (Rafael) but instead caused Jorge Juarez's death. Finally, counts VII through IX charged aggravated arson (*id.* §§ 20-1(a), 20-1.1(a)(1), (2)) based on the damage to the house and the injuries to Virginia Estrada and Virginia Juarez.

¶ 4 On December 5, 2011, the parties informed the court that they had reached a plea agreement in defendant's case. Defendant would plead guilty to count VII, which alleged that "the defendants ***, while committing an Arson, *** knowingly partially damaged a building of Virginia Estrada, being a residence ***, and the defendant reasonably should have known that one or more persons was present therein." In exchange for his plea, defendant would receive a sentence of 18 years' imprisonment, and the State would nol-pros the remaining eight counts. After hearing the plea terms, the trial court stated that it recalled from Elver's and Edwin's cases that defendant "was not there when the arson took place" and that "[t]he plea is based upon an accountability liability." Defense counsel confirmed the court's recollection. The court asked for a factual basis for the plea, and this exchange occurred:

"MR. KLEINHUBERT [(ASSISTANT STATE'S ATTORNEY)]: Judge, for the purposes of this plea, on May 8th of 2009, there was a meeting held at Alex Paz'[s] house and through the investigation, it was learned that Alex Paz was a member of the Latin Kings, that this defendant was present at his house for a meeting. Also, Edwin and [Elver]

were present, Wilmer Garcia, a Mike Puga and a Ricardo Truijillo. All were members of the Latin Kings.

During the course of that meeting, one of the subjects was—some members of the gang, one of them, specifically, [Rafael], who, there was some trouble with them within the gang, and there was an SOS issued, which was Smash on Site [*sic*], which was a disciplinary action against, in this case, [Rafael]. That was ordered by [defendant], and it was given to [Elver], who then later recruited his brother, Edwin, and during the early morning hours of May 9th of 2009, they took a bottle with some accelerant in it and a wick and lit it and threw it at [Rafael's] house.

Inside the house was [*sic*] Rafael's mother, Virginia Estrada, and the daughter, Virginia Juarez. For the purposes of this plea, both of them were injured both from the fire and from jumping out of the second floor window receiving injuries.

[Defendant] was not present. He gave the order for the SOS, and during the investigation, there was no specific order to burn the house. There was just a general order to commit this SOS.

Through the investigation, they did not determine that this defendant actually gave a specific order to burn the house or to actually use fire in the form of the SOS, and that occurred in Mundelein, Lake County, Illinois.

MR. WEINSTEIN [(DEFENSE ATTORNEY)]: So stipulated.

THE COURT: So, essentially, let me summarize. The defendant, in legal terms in the accountability language, encouraged Mr. Hernandez to commit an offense. Mr. Hernandez chose to use the fire which ultimately resulted in the harm in this case.

MR. WEINSTEIN: Yes.

MR. KLEINHUBERT: Correct.

THE COURT: And that constitutes accountability under the law, certainly, although it's different than committing the offense, itself, and accordingly, the Court finds it's an appropriate disposition."

¶ 5 The trial court found the factual basis sufficient and, after admonishing defendant, accepted his plea as knowing and voluntary. Accordingly, the court imposed the agreed sentence of 18 years' imprisonment.

¶ 6 Defendant did not file a postplea motion or a direct appeal. In March 2013, defendant filed a *pro se* postconviction petition under the Act. In the petition. defendant sought to withdraw his guilty plea because defense counsel was ineffective for, *inter alia*, failing to investigate and present witnesses who would attest that someone other than defendant within the Latin Kings gave the "Smash on Sight" (SOS) order to Elver. Defendant named several individuals but provided an affidavit from only one: Hoke L. Turner III. In his affidavit, dated May 3, 2010, Turner averred that he became acquainted with Edwin while they were in the same prison. According to Turner, Edwin told him that defendant was an enforcer within the Latin Kings but was not the one who issue the SOS order against Rafael at the May 8, 2009, meeting. Turner stated that, based on what Edwin said, "the actions that ensued the night of the incident were neither of [defendant's] knowledge nor consent." However, Turner did not say that Edwin identified who did, in fact, issue the SOS order.

¶ 7 Defendant also attached various police reports to his petition.

¶ 8 The trial court dismissed the petition as frivolous and patently without merit. The court determined that defendant failed to provide the necessary factual support for his assertion that someone else issued the SOS order. The court discounted Turner's affidavit because it was dated

almost 19 months before defendant's guilty plea and described Turner's discussions with Edwin but not defendant himself. The court also found that the police reports attached to the petition were, in fact, consistent with the factual basis for defendant's plea.

¶ 9    Defendant did not appeal the dismissal of his petition.

¶ 10    On September 29, 2021, defendant filed the petition at issue. It was titled "Post-Conviction Petition Actual Innocence Under 725 ILCS 5/122-1(c)." Defendant attached to his petition (1) the transcript of the December 5, 2011, plea hearing; (2) an incomplete copy of an August 27, 1998, application for a search warrant, apparently for a residence associated with Edwin and Elver; (3) various police reports from 2009; (4) Turner's affidavit of May 3, 2010 (which was attached to the initial petition); (5) an April 7, 2011, press release from the United States Department of Justice (DOJ), announcing that federal prosecutors had obtained convictions of several high-ranking Latin King members operating in the City of Chicago; (6) a July 26, 2016, press release from the United States Attorney for the Northern District of Illinois (USAO), reporting that federal prosecutors had obtained indictments against several leaders and rank-and-file members of the Latin Kings operating in the Chicago metropolitan area; (7) a November 29, 2014, Orlando Sentinel article about the culture of the Latin Kings in central Florida; and (8) defendant's July 23, 2021, affidavit claiming that Gerardo Salazar and Juan Galaviz issued the SOS order against Rafael. Defendant averred that "[he] did not order an SOS" and was "not legally responsible for the crimes of those who did."

¶ 11    Defendant did not include with his petition a motion for leave to file a successive petition. Nor did his petition itself ask for leave to file a successive petition or even acknowledge that it was successive. Moreover, although the petition was titled "Actual Innocence," defendant devoted most of the petition to claims that defense counsel denied him effective assistance. Defendant

argued that counsel was ineffective for (1) neglecting to challenge the facial sufficiency of the factual basis for defendant's guilty plea to aggravated arson and (2) failing to "challenge any of the State's wrong-minded theory [of criminal liability] in spite of the wealth of contradictory evidence in police reports," Turner's affidavit, and the other documents attached to the petition. Defendant did not mention "actual innocence" again until nearly the end of the petition, stating, "This petition sets forth a claim of actual innocence, in addition to constitutional claims of error." Thus, apparently, defendant asserted that the matters counsel unreasonably neglected were also the bases for his actual-innocence claims.

¶ 12    Defendant developed his ineffectiveness/actual-innocence claims as follows. First, he claimed that the factual basis for his plea to aggravated arson was facially insufficient because it did not satisfy the *mens rea* element, namely that the person "knowingly" set fire to a building or other property (*id.* § 20-1(a)). Defendant noted that, in presenting the factual basis for the plea, the prosecutor admitted that defendant was not present when the arson occurred and gave "no specific order to burn the house" but "just a general order to commit this SOS." Further, the trial court, too, recognized that defendant did not give a specific order to set fire to a house or kill someone. According to defendant, the factual basis "never bridge[d] the gap between smash on sight [and] arson, fire or Molotov cocktail." Thus, he contended that the trial court could not properly find that defendant *knowingly* committed arson on an accountability basis. Defendant further noted that the factual basis stated that defendant gave the SOS order to Elver alone. Accordingly, defendant maintained that he was not liable for Elver's decision to recruit Edwin, let alone the latter's "*ultra vires*" decision to implement the generic SOS order by setting Virginia Estrada's home ablaze.

¶ 13    Second, defendant claimed that the police reports, Turner's affidavit, and other attachments to the petition contradicted crucial points of the plea's factual basis. Defendant claimed that the documents established that (1) Rafael was on the Latin Kings' "SOS list" even before the May 8, 2009, meeting at Paz's house; (2) some Latin Kings members chased Rafael before the May 8, 2009, meeting, showing that he was already a target; (3) no Latin King leaders were at the May 8, 2009, meeting, and so no one had the authority to issue an SOS order; (4) even if an SOS were issued against Rafael at the meeting, it was by someone other than defendant, as he lacked authority within the Latin Kings to issue such an order (in his affidavit, defendant claimed that Salazar and Galaviz issued the order); and (5) an SOS order would not have been understood to command or authorize arson of a dwelling.[1]

¶ 14    In a written order, the trial court denied defendant relief. The court first corrected defendant's misunderstanding of the case's procedural posture. The court noted that defendant had commented at a status hearing that the petition was, by default, at the second stage of proceedings because the first-stage, 90-day-review period had expired. See 725 ILCS 5/122-2.1 (West 2020). The court clarified that, because defendant previously filed a petition (in 2013), his current petition was successive and he needed to obtain leave to file.

¶ 15    The court then denied defendant leave to file the petition. First, the court determined that defendant's actual-innocence claims were not supported by "new, material, noncumulative

---

[1]Defendant cited Elver's statement to the police that SOS entails an " 'ass kicking' " and Edwin's statement that SOS means " 'break windows or trash someone's house.' " Defendant argued: "Breaking windows or trashing [a] house does not rise to the level of telling someone to use fire, commit arson, or use a Molotov cocktail against an individual or their home."

evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal" (*People v. Reed*, 2020 IL 124940, ¶ 49). The court noted that the police reports, Turner's affidavit, and the April 2011 DOJ press release were not new evidence, because they predated defendant's December 2011 guilty plea (and defendant included Turner's affidavit with the initial petition). The court also found that the evidence postdating the plea—the July 2016 USAO press release and the November 2014 Orlando Sentinel article—was "simply immaterial and inconclusive."

¶ 16    As for the ineffectiveness claims, the trial court applied the "cause-and-prejudice test" (*People v. Ortiz*, 235 Ill. 2d 319, 330 (2009)) of section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2020)). The court found that the claims failed both prongs of the test because defendant (1) identified no impediment that prevented him from raising the claims in his initial petition and (2) did not establish that, but for defense counsel's errors, he would not have pleaded guilty.

¶ 17    Defendant filed this timely appeal.

¶ 18                                    II. ANALYSIS

¶ 19    At the outset, we note defendant's mischaracterization of the proceedings below. In its written order denying defendant relief, the trial court expressly corrected defendant's false assumption that his current postconviction petition was his first. Properly treating the petition as a successive one, the trial court ultimately denied defendant leave to file the petition. Nevertheless, in stating the nature of the case on appeal, defendant characterizes the trial court's action as a "dismissal" at "Stage One" rather than a denial of leave to file. He repeats this faulty description twice more, even though, at one point, he recognizes his petition as a successive one.

¶ 20    This leads us to the State's request that we strike defendant's brief and dismiss this appeal because he cites none of the standards governing successive petitions. As the State notes, we have the authority to strike an appellant's brief for lack of conformity with our supreme court rules,

which require, *inter alia*, that an appellant support argument with citation to authority (Ill S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)). *People v. Williams*, 2020 IL App (3d) 180024, ¶ 25. We share the State's frustration with defendant's "jump[ing] into" the merits of his petition without acknowledging the "immense procedural default hurdles" a defendant must clear to bring a successive postconviction petition (*People v. Davis*, 2014 IL 115595, ¶ 14). However, "striking an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the violations of procedural rules hinder our review." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 15. The flaws in defendant's presentation have not impeded our review. With the aid of the State's comprehensive brief, we have readily discerned that defendant's sole argument on appeal—that his petition presents a colorable actual-innocence claim—is fatally deficient. However, we caution defense counsel that we expect compliance with our supreme court rules and might not deal as charitably with future infractions.

¶ 21    We move to the merits. "The Act contemplates the filing of a single petition" (*People v. Coleman*, 2013 IL 113307, ¶ 81), and a defendant needs leave of court to file a successive petition (725 ILCS 5/122-1(f) (West 2020)). Leave to file will be granted "when fundamental fairness so requires." (Internal quotation marks omitted.) *Coleman*, 2013 IL 113307, ¶ 81. However, Illinois courts recognize only two fundamental-fairness exceptions to the bar against successive petitions. *People v. Taliani*, 2021 IL 125891, ¶ 55. The first exception is where the defendant meets the "cause-and-prejudice test" (*Ortiz*, 235 Ill. 2d at 330) by showing that he was objectively impeded from raising his claim in an earlier proceeding and that the claimed error so infected his trial that he was deprived of due process (see 725 ILCS 5/122-1(f) (West 2020)). *Taliani*, 2021 IL 125891, ¶ 55. The second exception is where the defendant shows that he suffered a miscarriage of justice. He does this specifically by making a "persuasive showing" of actual innocence. *Id.* A defendant

can claim actual innocence even after pleading guilty. *Reed*, 2020 IL 124940, ¶ 41. However, "a successful actual innocence claim requires a defendant who pleads guilty to provide new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal." *Id.* ¶ 49.

¶ 22    "Where, as here, a petitioner raises an actual innocence claim in a successive postconviction petition, the trial court should deny leave [to file] only where, as a matter of law, no colorable claim of actual innocence has been presented." *Taliani*, 2021 IL 125891, ¶ 52. Since this is a question of law, we review *de novo* the trial court's denial of leave to file. *Id.*

¶ 23    Defendant's challenge on appeal is significantly narrower than what he brought below. First, he no longer claims that his counsel was ineffective. Second, he abandons reliance on the evidence he submitted with his petition. In his briefs, he claims that his plea was not intelligent and voluntary, citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), as his primary authority. In *Boykin*, the United States Supreme Court held that a trial court violates a defendant's due process rights when it accepts the defendant's guilty plea "without an affirmative showing that it was intelligent and voluntary." *Id.* Defendant's briefs appear to link two issues: (1) whether the plea's factual basis was sufficient and (2) whether the plea was intelligent and voluntary. At oral argument, defense counsel confirmed that defendant's claim on appeal is that the plea was not intelligent and voluntary precisely because the factual basis did not satisfy the elements of aggravated arson based on accountability.

¶ 24    As framed, this claim fails on more than one level. To begin with, the claim is simply not one of actual innocence under Illinois law. An actual-innocence claim "does not depend on—and is separate from—a challenge to the sufficiency of the evidence or an allegation of error in the court below." *Reed*, 2020 IL 124940, ¶ 29. Thus, a claim of actual innocence following a guilty

plea "is not based on the defendant's misapprehension of the quality of the State's case *nor an error of the court in finding defendant guilty*." (Emphasis added.) *Id.* ¶ 40. "Rather, it is a request for the additional due process that is triggered by *new* and compelling evidence demonstrating defendant's innocence." (Emphasis added.) *Id.* "New means the evidence was discovered after the court accepted the plea and could not have been discovered earlier through the exercise of due diligence." *Id.* ¶ 49. Defendant's argument on appeal abandons any pretense of relying on *new* evidence—or, indeed, anything outside the four corners of the factual basis. His attack on the sufficiency of the factual basis asserts nothing but "an error of the court in finding defendant guilty" based on the stipulated facts. *Id.* ¶ 40.

¶ 25      Since defendant's claim is not one of actual innocence and he does not assert that his claim meets the cause-and-prejudice test, [2] he has failed to overcome the bar against successive postconviction petitions. We could affirm on that basis alone, but we also note that defendant's claim is not even a constitutional claim and, thus, cannot be brought in a postconviction proceeding.

¶ 26      The Act provides a means for a defendant to claim that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2020); see *People v. House*, 2021 IL 125124, ¶ 15 ("Postconviction relief is limited to constitutional deprivations that occurred during the original trial."). "Questions as to the sufficiency of the evidence have been held not to present a constitutional question and therefore are not properly

---

[2] Since defendant's claim is based entirely on matters appearing on the face of the record, he likely could not show cause for omitting the claim in earlier proceedings.

considered in post-conviction proceedings." *People v. Dunn*, 52 Ill. 2d 400, 402 (1972). In particular, "[a] postconviction proceeding is not a direct appeal or a continuation of a criminal case but is an independent, collateral attack on a judgment of conviction." *People v. Vasquez*, 307 Ill. App. 3d 670, 673-74 (1999). A collateral attack is not designed to relitigate guilt or innocence (*People v. Ligon*, 239 Ill. 2d 94, 103 (2010))—which is precisely what defendant would have us do by reevaluating the sufficiency of the factual basis.

¶ 27    As noted, defendant attempts to cast his attack on the plea's factual basis as a claim that the plea was not intelligent and voluntary. If defendant were raising his plea's voluntariness, the claim would be constitutional and thus cognizable in a postconviction proceeding. See *People v. Stroud*, 208 Ill. 2d 398, 403 (2004). However, defendant's characterization fails. He cites the Supreme Court's comment in *Boykin*, that, "because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." (Internal quotation marks omitted.) *Boykin*, 395 U.S. at 243 n.5. To that end, Illinois Supreme Court Rule 402(a)(1) (eff. July 1, 2012) requires that the trial court inform the defendant of the nature of the charge to which the defendant is pleading guilty. *People v. Ingeneri*, 7 Ill. App. 3d 809, 811 (1972). In fact, all the specified Rule 402(a) admonitions are designed "to insure [*sic*] that [the] guilty plea is intelligently and understandingly made, as required by *Boykin*." Ill. S. Ct. R. 402, Committee Comments (rev. May 1997). But our supreme court has drawn a clear distinction between (1) Rule 402(a)'s admonitions and (2) Illinois Supreme Court Rule 402(c) (eff. July 1, 2012) requirement for the trial court to determine a factual basis for the plea. The supreme court has maintained that Rule 402(c) is *not* derived from *Boykin*. See *People v. Nardi*, 48 Ill. 2d 111, 115 (1971) ("*Boykin* does not touch on the necessity of the court to make an inquiry as to the factual basis for the defendant's plea of

guilty."). What is more, "[Rule 402(c)'s] requirements are not constitutionally mandated." *Id.* at 116.[3] Defendant had a constitutional right to be informed of the nature of the charge to which he was pleading guilty. In essence, defendant's claim is not that the trial court inadequately informed him of the charge or the governing law but that the court itself drew the wrong legal conclusion from the stipulated facts. As *Nardi* holds, a defendant has no constitutional claim if the trial court accepts his plea without receiving *any* factual basis. See *id.* at 115. In that light, it follows that defendant's claim here—that the factual basis received was insufficient—is necessarily not constitutional in scope.

¶ 28    Given our conclusion that defendant's claim is not constitutional in scope, much less an actual-innocence claim, we do not decide whether the factual basis for the plea satisfied the elements of aggravated arson based on accountability.

¶ 29                                    III. CONCLUSION

¶ 30    For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

¶ 31    Affirmed.

---

[3]Defendant criticizes *People v. Wiser*, 27 Ill. App. 3d 208, 209 (1975), for holding that "the requirements of Rule 402(c) are not constitutionally mandated." Defendant urges us not to follow *Wiser*, but he fails to acknowledge that *Wiser* relied squarely on *Nardi* (see *id.*). Thus, we have no authority to depart from *Wiser* insofar as it followed our supreme court. We caution defense counsel to be more careful in representing precedent to this court.

---

*People v. Flores*, **2022 IL App (2d) 210757**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 09-CF-1874; the Hon. Daniel B. Shanes, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Jed Stone, of Stone & Associates, Ltd., of Waukegan, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Lynn M. Harrington, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---