NOTICE

Decision filed 07/30/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240772-U

NO. 5-24-0772

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 19-CF-1746 |
| | ) | |
| TERRANCE K. THOMAS, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Boie and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in dismissing defendant's *pro se* postconviction petition. All of his postconviction claims were properly rejected as being barred by *res judicata* or forfeiture, and/or frivolous and patently without merit. As any arguments to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the trial court's judgment.

¶ 2    Defendant Terrance K. Thomas was found guilty of possession of methamphetamine with intent to deliver and sentenced to 12 years in prison. His conviction and sentence were affirmed on direct appeal. He now appeals from the summary dismissal of his *pro se* postconviction petition. His appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial merit. On that basis, OSAD has filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a memorandum of law in support of that motion.

1

¶ 3    OSAD served defendant with notice and this court gave defendant an opportunity to respond, but defendant has not filed any type of response. This court has examined OSAD's *Finley* motion and the accompanying memorandum of law, as well as the entire record on appeal, and has concluded that this appeal lacks merit. Accordingly, we grant OSAD leave to withdraw as counsel, and affirm the judgment of the trial court

¶ 4                                    BACKGROUND

¶ 5    In November of 2019, the State charged defendant by information with one count of unlawful possession of methamphetamine with intent to deliver, a Class X felony. See 720 ILCS 646/55(a)(1), (a)(2)(D) (West 2018). The charging instrument alleged that on June 11, 2019, defendant "knowingly and unlawfully possessed with intent to deliver 100 grams or more but less than 400 grams of a substance containing methamphetamine." The matter proceeded to a jury trial on July 13, 2021.

¶ 6                          A. Trial Testimony and Evidence

¶ 7    At trial, the State presented five witnesses. Tashia Cunningham testified that she had been arrested on heroin charges, and had offered to "make a phone call" and "obtain some pills from someone" as a way of "helping" police and potentially herself. She called a saved contact in her phone, identified only as "Streetz," and arranged to buy "three or four jars" of pills. She explained that one jar would contain 100 pills.

¶ 8    Cunningham told Streetz to meet at her house for the transaction, and she did not need to give him the address. Later, they set a time for the exchange via texts. Cunningham testified that she recognized the voice on the phone as the person she knew as Streetz because she had called him to buy pills in the past. She also stated that she had met him in person. In court, Cunningham identified defendant as the person she knew as Streetz.

2

¶ 9    Through Cunningham's testimony, the State introduced photographs of her phone. She identified the phone in the pictures as her phone and Streetz's contact number as the phone number she called to set up the drug buy on June 11, 2019. Cunningham further identified two pictures of her phone displaying her text exchanges with Streetz on that day.

¶ 10    Detective Jonathan Roseman, of the Macon County Sheriff's Office, testified that after Cunningham was arrested, she offered to cooperate with law enforcement in exchange for consideration on her pending charge and provided him the name "Streetz." Detective Roseman was familiar with the name, and knew this to be defendant. Detective Roseman explained how he set up the drug transaction described by Cunningham. While Detective Roseman was not present at the scene, he monitored the operation in real time via radio traffic, and later reviewed the in-car video from the patrol vehicle at the scene.

¶ 11    In the video, Detective Roseman saw a silver Pontiac Grand Prix, which matched the description of one of the vehicles that Cunningham said Streetz typically drove. The State admitted into evidence a certified copy of the vehicle's registration, listing defendant as its sole owner. Detective Roseman testified that as officers approached the car, it "took off" in reverse, initiating a pursuit. Officers found the abandoned vehicle later that day. They also recovered four bags of pills containing methamphetamine, one from the car and three that had been discarded from the car during the pursuit.

¶ 12    Detective Roseman testified that defendant called the police department regarding his impounded vehicle on June 19, 2019. Detective Roseman spoke with defendant, who told the detective his phone number, which he said he had had for a significant period of time. The number defendant gave was not the same number Cunningham used to contact Streetz. Defendant denied

any involvement in a drug sale on June 11, saying he was in Chicago on that date and had his phone with him the whole time.

¶ 13    Detective Roseman ran the two phone numbers associated with defendant through the jail phone system and found one communication with the number Cunningham had for Streetz. He testified that an inmate had called this number and spoke with a male, who mentioned during the conversation that he recently had a baby. Detective Roseman said he was not "100 percent certain" that the speaker was defendant, as he had only spoken with him once.

¶ 14    Through investigation, Detective Roseman discovered that defendant was the father of a child who was born on June 11 at Decatur Memorial Hospital. The jury was shown surveillance footage from the hospital from that day. Detective Roseman identified defendant arriving at the hospital at 8:36 a.m. and leaving at 4 p.m. On cross-examination, Roseman testified that he arrested Cunningham at around 4 p.m. that day, and the drug bust took place about two hours later.

¶ 15    Detective Travis Wolfe, of the Macon County Sheriff's Office, testified that he was present at the drug bust organized by Detective Roseman, and was supposed to make initial contact with defendant when he arrived. His camera-equipped patrol vehicle recorded the incident starting at 5:45 p.m. Detective Matt Hunt, also present, positioned the patrol vehicle in front of the silver Grand Prix, while Detective Wolfe approached on foot. When the car took off, the detectives gave chase. Detective Wolfe testified that he did not see who was driving the Grand Prix or how many people were in the car.

¶ 16    Detective Wolfe provided testimony about finding and searching the abandoned vehicle, as well as recovering the bags of pills. Subsequent police lab analysis revealed that samples taken from each of the four bags contained methamphetamine and that the combined weight of the substance in all four bags was 179.9 grams. No latent fingerprints were found on any of the bags.

4

¶ 17    David Dailey, a police officer with the City of Decatur, testified that he had specialized training to extract and analyze data from cellphones, and that he analyzed certified phone records for the two numbers associated with the case. He stated that records for the number used by Cunningham showed that at 8:41 p.m. on June 11, 2019, there was a customer request to change the phone number associated with the account, and it was changed to the second number—the one that defendant provided Detective Roseman. Officer Dailey's analysis showed that neither number utilized a cell site close to Chicago on the date in question.

¶ 18    The defense called defendant's mother, Shannon Cofield, as a witness. She testified that defendant owned three vehicles in June of 2019, including a gray Grand Prix, although this was not his primary vehicle. She also stated that he allowed other people to drive his cars and left each vehicle's key under its floor mat.

¶ 19                        B. Conviction and Direct Appeal

¶ 20    The jury found defendant guilty of possession of methamphetamine with intent to deliver. On August 26, 2021, the trial court sentenced defendant to 12 years in prison. The Fourth District affirmed his conviction and sentence on direct appeal. *People v. Thomas*, 2022 IL App (4th) 210538-U.

¶ 21    Defendant raised the following four arguments on direct appeal: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court erred in admitting inadmissible hearsay evidence in the form of cellphone records, testimony from detectives Roseman and Wolfe, and text messages; (3) trial counsel provided ineffective assistance by failing to object to inadmissible hearsay evidence, call certain witnesses, or file a motion to suppress Cunningham's identification of defendant based on one photo, and by deciding to stipulate to a laboratory report; and (4) the cumulative prejudicial effect from the trial court's errors in admitting evidence resulted

in an unfair trial. *Id.* ¶ 3. Our supreme court denied defendant's petition for leave to appeal the Fourth District's decision on September 27, 2023. *People v. Thomas*, No. 129233 (Ill. Sept. 27, 2023).

¶ 22                                C. Postconviction Proceedings

¶ 23    Defendant filed a *pro se* postconviction petition on April 25, 2024, and an amended *pro se* petition on May 30, 2024, raising five claims. First, he argued that he was not proven guilty of actual or constructive possession of methamphetamine beyond a reasonable doubt because (1) no evidence identified who was in the silver Grand Prix or how many people were in the car, (2) Detective Hunt did not testify at trial and his report was "inexplicably" removed from evidence, and (3) there was nothing connecting defendant to the drugs aside from his ownership of the Grand Prix. Second, he claimed that his trial counsel provided ineffective assistance by failing to object to the erroneous admission of hearsay evidence from Officer Dailey, Detective Roseman, and Detective Wolfe. Third, he claimed that counsel was ineffective for failing to object to inadmissible hearsay testimony from the cellphone records and historical cell site analysis. Fourth, he argued that the use of a mugshot for identification purposes was prejudicial to him. Fifth, defendant contended that the cumulative effect of the errors alleged in the petition entitled him to a new trial. He also attached an exhibit, which he alleged was a page from Detective Roseman's sworn complaint for a search warrant for cellphone records.

¶ 24    The trial court dismissed defendant's petition at the first stage of postconviction proceedings on June 3, 2024. In its written order, the court found that the issues raised in the petition were barred by *res judicata* due to having been previously litigated on direct appeal. It noted that on appeal, defendant argued that he was not proven guilty beyond a reasonable doubt, that cellphone records were improperly admitted, trial counsel was ineffective for failing to object

to hearsay statements, the improper use of his photo, and the prejudicial effect of the cumulative errors. The court further wrote that any issue that was not raised on appeal, but could have been, was forfeited. The court therefore concluded that defendant failed to state the gist of a constitutional claim, and the petition was frivolous and patently without merit.

¶ 25    This appeal followed. OSAD was appointed as defendant's appellate counsel.

¶ 26                                    ANALYSIS

¶ 27    OSAD argues that dismissal of the postconviction petition was proper, and there are no meritorious arguments to the contrary. In the memorandum supporting its *Finley* motion to withdraw as counsel, OSAD reviewed whether defendant's petition should have been advanced to a second-stage hearing, based on either the trial court's failure to comply with necessary procedural requirements or based on the claims raised in the petition. As neither of these arguments have merit, we grant OSAD leave to withdraw.

¶ 28                       A. The Post-Conviction Hearing Act

¶ 29    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)) provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial. *People v. Taliani*, 2021 IL 125891, ¶ 53; *People v. Edwards*, 2012 IL 111711, ¶ 21. A proceeding under the Act is a collateral proceeding, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. The Act provides for three stages of postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 26.

¶ 30    At the first stage, relevant here, the trial court determines whether the petition "is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2024); *Cotto*, 2016 IL 119006, ¶ 26. A postconviction petition is "frivolous or patently without merit if it 'has no arguable basis either

in law or in fact.' " *People v. Hatter*, 2021 IL 125981, ¶ 23 (quoting *People v. Hodges*, 234 Ill. 2d 1, 16 (2009)). We review the trial court's dismissal of a petition at this stage *de novo*. *Id.* ¶ 24.

¶ 31     B. Whether the Court Complied With the Act's Procedural Requirements

¶ 32     The Act requires the court to review and enter an order on a postconviction petition within 90 days of its filing. 725 ILCS 5/122-2.1(a) (West 2024). If the court determines that it is frivolous or patently without merit, "it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision." *Id.* § 122-2.1(a)(2). At this first stage of the proceedings, the court's review of the petition must be done independently, without any further pleadings from the defendant or any motions, responsive pleadings, or other input from the State. *People v. Bailey*, 2017 IL 121450, ¶ 20 (quoting *People v. Gaultney*, 174 Ill. 2d 410, 419 (1996)).

¶ 33     Here, defendant filed his petition on April 25, 2024, and his amended petition on May 30, 2024. The trial court issued a written order dismissing the petition on June 3, 2024, less than 90 days later. The record does not contain any indication that the court relied on any input from the State, or any additional pleadings from defendant. As the petition was dismissed via written order, within 90 days of filing, without improper input from the State or defendant, there is no meritorious issue that can be raised regarding the court's lack of compliance with the procedural requirements of the Act.

¶ 34     C. Whether Defendant Pled Any Meritorious Claims

¶ 35     At the first stage of postconviction proceedings, most petitions are drafted by *pro se* defendants; accordingly, the threshold for a petition to survive dismissal is low. *People v. Allen*, 2015 IL 113135, ¶ 24. At this stage of review, " 'the court considers the petition's substantive virtue rather than its procedural compliance.' " *Id.* (quoting *People v. Hommerson*, 2014 IL

8

115638, ¶ 11). If the defendant alleges sufficient facts to state the gist of a constitutional claim, dismissal at the first stage is inappropriate "even where the petition lacks formal legal argument or citations to authority." *Id.* However, the aforementioned low threshold does not excuse a *pro se* defendant from providing adequate factual support for his claims—he must still "supply sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration.' " *Id.* (quoting *People v. Collins*, 202 Ill. 2d 59, 67 (2002)).

¶ 36    The doctrine of *res judicata* bars consideration of issues that were previously raised and decided on direct appeal. *People v. Blair*, 215 Ill. 2d 427, 443 (2005). Our supreme court has held that the legislature, in passing the Act, intended to include in the meaning of "frivolous or *** patently without merit" issues barred by *res judicata* and forfeiture. *Id.* at 445 (regarding section 122-2.1(a)(2) of the Act, "where *res judicata* and forfeiture preclude a defendant from obtaining relief, such a claim is necessarily 'frivolous' or 'patently without merit' "). The court has further explained that, because a postconviction petition is a collateral attack on the judgment, "issues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*, while issues that could have been raised, but were not, are forfeited." *Taliani*, 2021 IL 125891, ¶ 53.

¶ 37    Relatedly, as a postconviction proceeding "is not a direct appeal or a continuation of a criminal case but is an independent, collateral attack on a judgment of conviction," it is "not designed to relitigate guilt or innocence." *People v. Flores*, 2022 IL App (2d) 210757, ¶ 26 (citing *People v. Ligon*, 239 Ill. 2d 94, 103 (2010)). An exception exists allowing a defendant to raise a claim of actual innocence based on a showing of *newly discovered* evidence demonstrating his innocence; such a claim is not a challenge to the sufficiency of the evidence or allegation of error at the level of the trial court. *People v. Reed*, 2020 IL 124940, ¶¶ 29, 49.

¶ 38    In the present matter, defendant's first claim in his *pro se* petition is that the State did not prove his guilt beyond a reasonable doubt. His argument is based on the insufficiency of the evidence presented at trial. It is not a claim of actual innocence supported by "new, material, noncumulative evidence," and constitutes an improper attempt to relitigate his guilt. *Id.* ¶ 49. Additionally, as the trial court noted in its order dismissing the petition, this claim is barred by *res judicata* because it was raised and rejected on direct appeal. See *Thomas*, 2022 IL App (4th) 210538-U, ¶¶ 39-47.

¶ 39    Defendant's next two claims allege ineffective assistance of trial counsel, for failing to object to hearsay evidence in the form of testimony from the police witnesses, the cellphone records, and the historical cell site analysis. Again, as noted by the trial court and evidenced by his arguments on direct appeal, all of defendant's allegations regarding ineffective assistance of counsel and the improper admission of the cellphone evidence were litigated on direct appeal, and/or could have been raised on appeal. Thus, they are either barred by *res judicata* or, to the extent that he makes any new allegations in the petition, they are forfeited.

¶ 40    Additionally, defendant does not plead ineffective assistance of appellate counsel in his petition and therefore does not present any claims that could survive either procedural bar. See *People v. Addison*, 2023 IL 127119, ¶ 25 (discussing second-stage proceedings, finding that postconviction counsel provided unreasonable assistance by failing to shape defendant's claims into proper legal form by pleading ineffective assistance of appellate counsel to avoid forfeiture).

¶ 41    Defendant also attached a page from Detective Roseman's sworn complaint for a search warrant for cellphone records. He argued that Detective Roseman stated in his complaint that cell site location information "does not provide an exact location of a cell phone; the basic call data only provides the physical location of the cell site (latitude and longitude) and a direction (azimuth)

10

from the cell site, which can cover an area anywhere from 0-20 miles." Defendant further contended that, had the jury learned of Detective Roseman's statement, the outcome of the trial would have been different.

¶ 42 Although this exhibit was not a part of the record on direct appeal, this claim was also properly dismissed as meritless, as it is contradicted by the record. *Allen*, 2015 IL 113135, ¶ 25 ("Meritless legal theories include ones completely contradicted by the record."). On cross-examination, Officer Dailey testified that cell site location data does not provide an exact pinpoint location for the cellphone during a call. He explained, "[W]hat I'm mapping out does not estimate the location of the device. It just tells me what cell site is being utilized and what side of the antenna is being used." He further conceded that he "would not be surprised" if a cellphone was located a mile away from the cell site antenna.

¶ 43 Detective Roseman's sworn complaint would have been duplicative of Officer Dailey's testimony. Through Officer Dailey's responses, the jury heard that cellphone location data does not pinpoint the exact location of a phone, and the phone could be some distance away from the antenna being used. Thus, the record positively rebuts defendant's assertion that the outcome of the trial would have been different had the jury been shown Detective Roseman's statement regarding cell site location data. The jury convicted him despite hearing Officer Dailey's explanation of the possible inaccuracies of this data, and there is no merit to the argument that the outcome would have differed with the introduction of Detective Roseman's statement.

¶ 44 Defendant's fourth claim is that he was unfairly prejudiced by the court's allowing Detective Roseman to testify that he relied on mugshots to identify defendant. He alleges that while Detective Roseman's identification of defendant was "remarkably weak," his testimony would lead the jury to believe that defendant must have committed the offense because of the

11

"suggest[ion of] prior contact with the police." OSAD argues that this argument is similar to an argument that defendant brought on appeal regarding Cunningham's identification of defendant based on a single photo.

¶ 45   On direct appeal, defendant argued that the use of a single photo "gave rise to an unreliable and suggestive identification" because Cunningham had not given a physical description of Streetz or identified Streetz by his legal name of Terrance Thomas. *Thomas*, 2022 IL App (4th) 210538-U, ¶ 74. The Fourth District found that the record showed that Cunningham's identification was proper, as she had told the police she had previously met Streetz in person—this was someone she already knew, albeit not by his legal name. *Id.* ¶ 76. Additionally, Detective Roseman testified that he knew Streetz to be defendant, and he provided Cunningham with a photo of defendant to determine whether the man she knew as Streetz and the man Detective Roseman knew as Terrence Thomas were the same person. *Id.* The Fourth District therefore determined that, based on the circumstances, a motion to suppress the photo would have been futile, and trial counsel acted reasonably by choosing not to file a futile motion. *Id.*

¶ 46   There are notable differences between defendant's fourth postconviction claim and his abovementioned argument on appeal. The record does not indicate that defendant was referring to a mugshot in his allegations regarding the photo that Detective Roseman showed Cunningham, or that he was claiming prejudice based on the implication that he had a criminal history. However, we agree with OSAD to the extent that the postconviction claim similarly fails because neither Detective Roseman's nor Cunningham's identification of defendant was unduly suggestive or otherwise improper. We need not find that defendant raised this same issue on appeal, because it is based on information contained in the record on appeal, and thus could have been raised at that time. Defendant also did not present this argument as ineffective assistance of appellate counsel

12

for failing to address this issue on appeal. As such, defendant has forfeited this claim. *Taliani*, 2021 IL 125891, ¶ 53.

¶ 47 Lastly, defendant argues that the cumulative effect of the errors alleged in his petition entitles him to a new trial. This claim was also litigated on direct appeal, and is barred by *res judicata*. Additionally, the aforementioned "errors" are based on claims that—as discussed above—were properly dismissed as either barred by *res judicata*, forfeited, or patently without merit.

¶ 48 Therefore, we conclude that the trial court's summary dismissal of defendant's postconviction petition was proper, and there exists no meritorious argument to the contrary.

¶ 49 CONCLUSION

¶ 50 As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the trial court's judgment.

¶ 51 Motion granted; judgment affirmed.