NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240948-U

NOS. 4-24-0948, 4-24-0949, 4-24-0950 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 26, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| DEVANTE HILL, | ) | Nos. 11CF2584 |
| Defendant-Appellant. | ) | 11CF2593 |
| | ) | 11CF2598 |
| | ) | |
| | ) | Honorable |
| | ) | Ronald J. White, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Vancil and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held:*  The appellate court concluded that the trial court did not err when it dismissed
defendant's postconviction petition at the second stage of proceedings.

¶ 2     In November 2014, defendant, Devante Hill, was convicted of three counts of
armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2010)) and one count of attempted
armed robbery (*id.* § 8-4, 18-2(a)(2)) arising from a series of armed robberies involving defendant
and two other individuals, as well as two handguns. The trial court later sentenced defendant to 42
years in prison.

¶ 3     Defendant appealed, arguing in part that the evidence was not sufficient to support
his convictions for armed robbery with a firearm. The Appellate Court, Second District, affirmed
his convictions and sentence. *People v. Hill*, 2016 IL App (2d) 150793-U, ¶ 2.

¶ 4     In June 2018, defendant *pro se* filed a postconviction petition pursuant to the

Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). In August 2018, postconviction counsel entered his appearance and, in February 2023, filed an amended petition for postconviction relief. Pertinent to this appeal and as described in defendant's brief, that petition's primary claim was that defendant was denied due process of law "because the firearm recovered was not proven to have been possessed by [defendant], or connected in any way to the three charges, and was not demonstrated to be a firearm as opposed to a toy, replica, or other items meeting the definition of 430 ILCS 65/1.1."

¶ 5        In April 2023, the State filed a motion to dismiss, to which defendant's postconviction counsel later filed a response.

¶ 6        In February 2024, following a hearing, the trial court dismissed defendant's petition.

¶ 7        Defendant appeals, arguing that (1) his "postconviction petition made a substantial showing of a constitutional violation where he presented evidence that trial counsel was ineffective for not investigating and presenting evidence that the rusty old inoperable gun found in weeds was an antique and therefore not a firearm as defined by law"; (2) his "postconviction petition made a substantial showing of a constitutional violation where he asserted that appellate counsel was ineffective for failing to raise on direct appeal the lack of proof that the first, 'silver' gun was not a firearm, and remand is required because postconviction counsel provided unreasonable assistance in failing to appropriately plead necessary facts in support of the assertion that appellate counsel was ineffective for failing to raise on direct appeal the lack of evidence that the second, 'black' gun was a firearm"; and (3) "remand is required because postconviction counsel provided unreasonable assistance by failing to properly allege and support [defendant's] proportionate penalties claim."

¶ 8    We disagree with all of defendant's arguments and affirm.

¶ 9    I. BACKGROUND

¶ 10    The resolution of this case requires a discussion of the charges against defendant and the evidence presented at his jury trial. Because the Second District did a fine job in defendant's direct appeal in this case in providing that necessary background, we will simply quote what that court wrote.

¶ 11    A. The Charges Against Defendant and the Evidence at His Jury Trial

¶ 12    When resolving defendant's direct appeal in this case, the Second District provided the following factual background:

"On September 28, 2011, the defendant was indicted on three counts of armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2010)) (the armed robbery statute), one count of attempted armed robbery (720 ILCS 5/18-2(a)(2) (West 2010)); 720 ILCS 5/8-4 (West 2010)); two counts of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1 (West 2010)); and one count of resisting a peace officer (720 ILCS 5/31-1(a) (West 2010)). The charges stemmed from a series of robberies that occurred in Rockford on September 15, 2011. Prior to trial, the charges for unlawful possession of a weapon by a felon were severed by agreement of the parties.

* * *

A jury trial commenced on October 29, 2014. Melissa Lamb testified that on September 15, 2011, she was a cashier at a Dollar Tree store in Rockford. At around 8:30 p.m., three men with guns ran into the store. One approached her, placed a black handgun to her head and threatened to 'blow her brains out' if she

did not open her register. She and another employee, Terry Herrera, opened their registers and the men took all the money. One of the men had stayed by the door. The men were wearing masks so she could only see their eyes and foreheads. They were all African American males. After the men left the store, she called 911 and reported the robbery. She told the dispatcher that three black men had robbed the store, there were two guns involved, and one of the males was wearing a white or gray hoodie. She believed all three men were about 5'7". To an officer that responded to the scene, Lamb described her assailant as 5'7", 150 pounds, with a gray hooded sweatshirt, a dark mask, and dark gloves.

Herrera corroborated Lamb's testimony. Herrera said one of the men had also pointed a silver handgun at her head as well. The suspect who held the silver gun to her head was wearing a white t-shirt, dark hoodie, denim jeans, something wrapped around his face, and dark gloves. She believed that the suspect who remained at the door was shorter than the other two suspects. She believed that the man who held the gun to her head was about 6'0" tall, 160 pounds. She believed that the man who threatened Lamb was about the same size.

Two employees of a nearby Walmart store, on Riverside Street, testified that they were outside on break when they saw the three men run from the Dollar Tree store. They testified that the men were black and had t-shirts pulled over their faces.

Kalo Benjamin testified that at the time of trial he was incarcerated, serving a 21-year sentence for armed robbery with a firearm related to the robberies at issue in this case. He did not agree to testify in exchange for his 21-year plea deal and no

promises or threats were made in exchange for his testimony. On September 15, 2011, he drove a Chevy Malibu to the Walmart on Riverside with Jemel Johnson, Tommy Rosser, and the defendant. He parked at an apartment building behind the Walmart while the other three went into the Dollar Tree. The defendant was carrying a silver revolver. Johnson also had a gun. The three were gone for about 10 to 15 minutes. When they returned, he drove them to Anna's Pizza, and parked around the corner. The three exited the vehicle and went to Anna's. From where he was parked he could not see Anna's but he heard a lady screaming from the direction of Anna's. At that point, he left and went to another friend's house.

Anna Chiarelli testified that she owned Anna's Pizza. On September 15, 2011, a little before 9 p.m., she was sitting behind the front counter when she saw three masked men approaching on her surveillance cameras. She believed they intended to rob her so she called 911. They entered the vestibule but were unable to enter the restaurant because the inner door was locked. She turned her surveillance video over to the police.

Todd Kundert testified that he was a delivery driver for Anna's. At around 8:50 p.m., he returned from a delivery and parked right in front of Anna's. As he pulled in, he saw three men with masks on their faces and he believed they intended to rob Anna's. When the inner door to Anna's would not open, one of the men came toward Kundert's car and pointed a 'black something' at him, which Kundert assumed was a gun. Kundert placed his car in reverse and drove away. The suspect, who was wearing dark overalls and a light-colored garment over his face, told him to stop. From the parts of their skin that were exposed, Kundert testified that all

three suspects were black. As he was driving away, Kundert saw the men begin to flee so he turned around and began following them. He called 911 and told the dispatcher that the suspects were running and that they were removing their clothing. Kundert testified that the suspects eventually split up, with two running toward Hecker and Custer Streets and another one running east toward the cemetery. Kundert also saw a dark colored vehicle in a parking lot across the street leaving the scene with its headlights off, blowing several stop signs on the way.

Kathryn Pomerene testified that she was entering a pub and grill, Mulligan's, on September 15, 2011, at about 9 p.m. Her father was with her and she planned to meet her fiancé there. As they were about halfway toward the door of Mulligan's someone ran up beside her, put a shiny silver gun to her head, and stole her purse. There were three assailants, but she only saw one of them. The one she saw was about 18 years old, black, and about 5'10". All three were wearing hoodies: black, red, and a light gray or cream colored. All had their faces covered.

Kevin Gulley testified that he was a Rockford police officer. On September 15, 2011, he was called to the scene of an armed robbery at Anna's Pizza. He was in an unmarked vehicle, wearing plainclothes and a police vest. On the way to Anna's he came upon three black males that he believed were suspects for the armed robbery. Two of the suspects were wearing sleeveless t-shirts and the third was wearing a white t-shirt. Officer Gulley exited his vehicle and pointed his weapon at the three. Rosser stopped, but the other two ran.

Gregory Yalden testified that he was a Rockford police officer. On September 15, 2011, he was in an unmarked squad car patrolling the west side of

Rockford. His partner, Officer Don Dulgar, was driving. Yalden was wearing a tactical vest and a baseball hat that said 'Rockford Police' on it. They heard a dispatch regarding three suspects that had fled the scene of an armed robbery at Anna's Pizza. They drove that direction. They parked and turned off their lights at the southwest corner of Latham and Yonge streets. While sitting there, they saw a black male walking southbound on Yonge. They exited the car and approached the man, who looked back at him. Yalden yelled 'Stop, Police' but the man began to run. The officers chased the man and continued identifying themselves as police and telling him to stop. The man ran from Yonge Street to Latham Street, then eastbound through an alley, across North Main Street, and into Greenwood Cemetery. Yalden entered the cemetery and began to look for the man. He found a man trying to conceal himself in a large bush. Another officer, Officer Jury, who had responded to Yalden's call for back-up, was also present. They both pointed their weapons at the man in the bush and told him to show his hands. When the man did not do so, Yalden grabbed him by the left arm and tried to drag him out of the bush. The man resisted and Yalden overpowered him and forced him face first into the ground. Yalden said he had no choice as the man was not taking directions and he did not know if the man was armed. Yalden arrested the man about 8:58 p.m. Yalden identified in court the man he arrested as the defendant.

    ***

Sergeant Joseph Stevens testified that he found Johnson hiding in some bushes at 1819 Latham Street and arrested him. Johnson was wearing a white t-shirt, black pants, and black shoes. Detective Maurice Pruitt testified that he

arrested Benjamin without incident in front of Benjamin's house. The record indicates that surveillance video was reviewed from Walmart, Anna's, and Mulligan's. Sergeant David Lee testified that the clothing Rosser had on when arrested, including a yellow bracelet, was similar to clothing worn by one of the assailants as seen on the video surveillance footage. Detective David Patterson testified that the clothing Johnson had on when arrested was similar to the clothing worn by one of the assailants on the video surveillance footage.

Sergeant Kurt Whisenhand testified that on September 16, 2011, he went to the area of 1925 Latham to search an area in which there had been a foot chase the previous night. In the alley between the 1900 blocks of Latham and Freemont streets, he found a white t-shirt and a rusty silver revolver in a bush. Detective Brian Shimaitis, an expert in firearms, testified that the recovered gun was inoperable because it was missing its hammer, and thus could not expel a projectile. He further testified that a civilian might not notice the missing hammer and that some revolvers do not have a visible hammer. In his opinion, the gun with the missing hammer was still a firearm. He did not know when the hammer was removed.

Christina Davison testified that she was a forensic scientist specializing in firearms identification at the Rockford Forensic Science Laboratory. She defined a firearm as 'an assembly of parts designed to fire projectile using the products of combustion.' She examined the recovered gun and determined that it was inoperable because it was missing its hammer and firing pin. In her opinion, the gun was still a firearm because it was designed to propel projectiles using the products of combustion.

***

Detective David Swanson testified that he interviewed the defendant at the Public Safety Building on the evening of September 15, 2011. *** Swanson presented the defendant with a standard waiver of rights form, which the defendant initialed and signed.

Swanson further testified that the defendant initially denied involvement in the robberies but, after about a half hour of questioning, the defendant admitted to his involvement in the Dollar Tree robbery, the Anna's Pizza attempted robbery, and the Mulligan's robbery. The defendant made his admissions orally and in writing. ***

In the defendant's statement, the defendant said he was with friends driving around when they stopped and suddenly began to 'mask up,' meaning that they put clothing over their faces. The defendant knew his friends were planning a robbery and felt that he had to go along with it. He took a gun from his friends, deciding that '[he] was going to be the one that held the gun so that no one would get hurt.' The defendant and two of his friends walked through a field to the Dollar Tree store, while the third stayed in the car and waited. They entered the Dollar Tree and the defendant pointed his gun at people while his friends did all the talking. They took money from the registers and returned to the car. No one was hurt. They next planned to rob Anna's Pizza. The defendant knew Anna's was closing soon so he stalled his friends. He was still carrying the gun because he did not want anyone to get hurt. When they arrived at Anna's, the doors were locked. As they turned to leave, his friends saw a man in a Jeep in the parking lot. They told the defendant to

'get him.' The defendant pointed his gun at the man in the Jeep, but the man drove away and no one was hurt. As the three walked through the parking lot of the bar next door, one of his friends took the silver gun from him and he began to walk away. As he was leaving, his two friends stole a purse from a woman who was walking through the parking lot. After he left the parking lot, the defendant noticed police in the area so he started to take his clothes off and ran to the cemetery where he was apprehended. The defendant stated that he only participated in the robberies because he felt pressure from his friends.

    ***

    *** [The defendant] testified that he *** did not enter the Dollar Tree on September 15, 2011, and was not one of the men who threatened Lamb or Herrera. After that robbery, he did not put on a mask and attempt to enter Anna's Pizza. He did not point a gun at Kundert and did not threaten Pomerene at Mulligan's. At some point in the evening of September 15, 2011, he met Rosser and Johnson near the Hershey's Manor housing complex. They appeared to be out of breath, and he assumed they had been running. As they approached, a black car turned the corner at a high rate of speed and a man with a gun jumped out of the car. The man never identified himself as the police and the car did not have flashing police lights. The defendant fled with Johnson because he saw the gun and was afraid. Once he was a few blocks away, he saw the same car and began to run again. He jumped the fence into the cemetery, tripped over a vase, and fell into a bush. He was immediately pulled out of the bush by men who did not identify themselves as police officers.

> *** They brought him to the police station and put him in an interview room. *** He did not recall being read his rights or signing a waiver form. ***
>
> *** The State impeached the defendant with his written statement, which contradicted his testimony at trial. The defendant acknowledged signing and initialing the written statement but insisted that the written statement was not true. *** He testified that he was not involved with the robberies." *Hill*, 2016 IL App (2d) 150793-U, ¶¶ 4-27.

¶ 13    The jury found defendant guilty on all counts, and in February 2015, the trial court conducted a sentencing hearing, at which it imposed the following sentences: 35 years in prison each for the robbery of Lamb and Herrera, with those sentences to be served concurrently; 15 years in prison for the attempted robbery of Kundert, with that sentence to be served consecutively; and 35 years in prison for the robbery of Pomerene, with that sentence also to be served consecutively to the other sentences.

¶ 14    Defendant filed a motion to reconsider his sentence, and in July 2015, the trial court granted that motion and resentenced him. His new sentence was 21 years in prison for the armed robberies of Lamb and Herrera, to be served concurrently; 21 years in prison for the robbery of Pomerene, to be served consecutively; and 15 years in prison for the attempted robbery of Kundert, to be served concurrently. As a result, defendant's aggregate sentence was a total of 42 years in prison.

¶ 15    Defendant appealed his convictions and sentences.

¶ 16              B. Defendant's Argument in His Direct Appeal

¶ 17    In defendant's direct appeal, he argued that

"the evidence was insufficient to support his convictions for armed robbery with a

firearm because the weapon recovered did not satisfy the definition of a 'firearm' within the meaning of the statute on which he was charged, 725 ILCS 5/18-2(a)(2) (West 2010). The defendant contends that this case should be remanded for resentencing on the lesser included offense of robbery (720 ILCS 5/18-1(a) (West 2010))." *Id.* ¶ 44.

¶ 18    The Second District rejected this argument, explaining as follows:

"The defendant's conviction was based on section 18-2(a)(2) of the armed robbery statute, which provides that a person commits armed robbery when he or she takes property from a person by threatening the imminent use of force while armed with a firearm. 720 ILCS 5/18 2(a)(2) (West 2010); *People v. Clark*, 2015 IL App (3d) 140036, ¶ 19. Section 2-7.5 of the Criminal Code of 1961 (Criminal Code) states that, '[e]xcept as otherwise provided in a specific [s]ection, "firearm" has the meaning ascribed to it in [s]ection 1.1 of the Firearm Owners Identification Card Act [(FOID Act)].' 720 ILCS 5/2-7.5 (West 2010). Section 1.1 of the FOID Act defines a firearm as 'any device *** which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas.' 430 ILCS 65/1.1 (West 2010). This definition excludes pneumatic guns, spring guns, paint ball guns, certain BB guns, and signal guns. *Id.*; *People v. Hunter*, 2016 IL App (1st) 141904, ¶ 16.

***

Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that the defendant used a firearm in the commission of the offense. The presence of a firearm may be inferred from circumstantial evidence.

- 12 -

*People v. Lampton*, 385 Ill. App. 3d 507, 512 (2008). Lamb testified that during the robbery of the Dollar Tree store, one of the assailants pointed a black gun at her. Herrera testified that one of the assailants pointed a silver gun at her. Pomerene also testified that when she was robbed, the assailant pointed a shiny silver gun at her head. Kundert testified that one of the assailants pointed a 'black something' at him, which he assumed was a gun. The 'unequivocal testimony of a witness that the defendant held a gun is circumstantial evidence sufficient to establish that a defendant is armed [with a firearm] during a robbery.' *People v. Fields*, 2014 IL App (1st) 110311, ¶ 36; see also *People v. Toy*, 407 Ill. App. 3d 272, 289 (2011); *People v. Hill*, 346 Ill. App. 3d 545, 549 (2004). As such, the evidence was sufficient to convict.

The defendant argues that the evidence was not sufficient because the silver gun that was recovered was inoperable and, thus, ceased to be a firearm within the meaning of 430 ILCS 65/1.1 (West 2010) and 720 ILCS 5/18-2 (West 2010). ***

The defendant acknowledges that in *People v. Hill*, 346 Ill. App. 3d 545 (2004), the Fourth District Appellate Court rejected the same argument the defendant raises here, namely, tha[t] an inoperable gun is not a firearm within the meaning of the armed robbery statute. He urges us to depart from *Hill*, and interpret section 65/1.1 of the FOID Act (430 ILCS 65/1.1 (West 2010)) and section 18-2(a)(2) of the armed robbery statute (720 ILCS 5/18-2(a)(2) (West 2010)) as excluding firearms which have been rendered inoperable. While the opinion of one district of the appellate court is not binding on other districts (*O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008)), this court may follow

the reasoning of a decision in another district when, as in the instant case, the facts are similar and the court's reasoning is persuasive.

In *Hill*, the defendant was charged and convicted of attempted armed robbery. Witnesses testified that the defendant had a chrome or silver automatic handgun with a long barrel. *Id.* at 546-47. On appeal, the defendant argued that he was not proved guilty beyond a reasonable doubt because the gun he was carrying was inoperable and did not qualify as a firearm within the meaning of section 1.1 of the FOID Act (430 ILCS 65/1.1 (West 2010)). The *Hill* court rejected the defendant's argument for three reasons. First, no evidence was presented that the gun was inoperable at the time of the attempted robbery. Second, the evidence was sufficient to show that the gun, even if it was inoperable, could have been used as a dangerous weapon and, therefore, the evidence was sufficient to find the defendant guilty of armed robbery for carrying a dangerous weapon under subsection 18-2(a)(1) of the armed robbery statute (720 ILCS 5/18 2(a)(1) (West 2010)). Third, the court found that the inoperable gun was still a 'firearm' within the meaning of the FOID Act. Specifically, the *Hill* court found:

'According to the [definition of a firearm under the FOID Act], the focus is on the intended purpose of the firearm based upon its design, not the current status of its ability to be used as intended. As such, the evidence here, which indicated that defendant was armed with a "nickel-plated automatic" handgun, was sufficient to qualify as a "firearm" within the meaning of section 1.1 of the FOID Act despite defendant's contention that it was inoperable.' *Id.* at 549.

- 14 -

We find the reasoning in *Hill* persuasive. There is nothing in the plain language of section 1.1 of the FOID Act or the armed robbery statute that requires a firearm to be currently operational and functional to serve as the basis for a conviction under section 18-2(a)(2) of the armed robbery statute. *Cf.* 720 ILCS 5/24-1(a)(4)(i) (West 2010) (unlawful use of weapons statute that expressly provides an exception for certain weapons that are broken down in a nonfunctioning state). Notably, an inoperable firearm is not one of the explicit exceptions [set] forth in section 1.1 of the FOID Act. Since the legislature has not so limited the statute, we will not read such a limitation into the statute. *Perry*, 224 Ill. 2d at 323-24. Accordingly, the fact that the firearm was inoperable does not preclude a conviction for armed robbery under section 18-2(a)(2). *Hill*, 346 Ill. App. 3d at 549; see also *People v. Williams*, 394 Ill. App. 3d 286, 291 (2009) (for conviction on statute making it unlawful to possess a shotgun with a barrel less than 18 inches in length, it was sufficient under section 1.1 of the FOID Act that the weapon had the looks and characteristics of a firearm, and it was immaterial that the weapon was inoperable and rusted).

Moreover, as in *Hill*, there was no evidence in this case as to when the hammer and pin went missing or whether the firearm was operable at the time of the robberies at issue. Additionally, there was no definitive evidence that the firearm found near the scene of the post-robbery foot chase was the firearm the defendant used at the time of the offense. Accordingly, viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the defendant guilty of armed robbery with a firearm." *Id.* ¶¶ 45-52.

¶ 19                          C. Defendant's Postconviction Petition

¶ 20        In June 2018, defendant *pro se* filed a postconviction petition pursuant to the Act. (725 ILCS 5/122-1 *et seq.* (West 2018)). In August 2018, postconviction counsel entered his appearance and, in February 2023, he filed an amended petition for postconviction relief. As described in defendant's brief, that petition alleged that defendant was denied due process of law "because the firearm recovered was not proven to have been possessed by [defendant], or connected in any way to the three charges, and was not demonstrated to be a firearm as opposed to a toy, replica, or other items meeting the definition of 430 ILCS 65/1.1."

¶ 21        That petition, again as defendant describes on appeal, also alleged (1) the ineffective assistance of trial counsel for failing to object to (a) the State's motion for joinder of the three cases and (b) "the firearm add-ons because the weapon was an antique" and (2) the ineffective assistance of appellate counsel for failing to raise on direct appeal the lack of proof that a "silver" gun was not a firearm.

¶ 22        In April 2023, the State filed its motion to dismiss defendant's petition, and defendant's postconviction counsel later filed a response. Postconviction counsel also filed an amended petition. In October 2023, after several continuances, the trial court conducted a hearing on defendant's amended petitions and the State's motion to strike them.

¶ 23        At that hearing, the State addressed defendant's claim that his trial counsel was ineffective for failing to object to the State's motion for joinder of the three cases. The State argued that the three robberies in question were committed within a small area within a 30-minute time frame by the same defendants, who were all part of the same comprehensive transaction.

¶ 24        Regarding defendant's argument on the sufficiency of the evidence concerning the recovered gun, the State argued that this was not a proper claim to be raised in a postconviction

petition because it attacked the sufficiency of evidence. Moreover, the State pointed out that defendant had already argued on direct appeal that the evidence was insufficient to establish that an armed robbery was committed with a firearm and the appellate court rejected that argument. The State further claimed that the appellate court's rejection of that argument, and its basis therefor, made this issue *res judicata* and the law of the case.

¶ 25    Regarding defendant's postconviction claim that his sentence violated the proportionate penalties clauses of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) and the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) due to his youth, the State pointed out that defendant had (1) offered nothing beyond the fact that he turned 18 years old 39 days before he committed these offenses and (2) provided no specifics as to why the sentence was cruel and unusual.

¶ 26    In response, postconviction counsel argued that (1) the weapon in question was "a central piece of evidence woven throughout [the State's] case," (2) the weapon was an antique, and (3) the State's witnesses had not testified with sufficient specificity about the weapon. Postconviction counsel also addressed the proportionate penalties claim by pointing out that (1) young individuals who are emerging adults are different because they are impulsive and (2) it is not until age 25 that they begin to have more reasoning and control.

¶ 27    The trial court took the matter under advisement and, in February 2024, reconvened to issue its oral ruling. The court concluded that defendant had failed to make a substantial showing of a constitutional violation and granted the State's motion to dismiss the amended petition.

¶ 28    The trial court explained its decision at length, noting, for instance, that "the admissibility of the weapon was established with the testimony of the detective who found the firearm the morning after the robberies, the testimony of the detective who recovered the firearms

with other items, and the testimony of the forensic scientist regarding the firearm."

¶ 29    Regarding defendant's proportionate penalties claim, the trial court noted that the Illinois Supreme Court had explained that the legislature enacted the firearm enhancement to deter the use of firearms in the commission of robberies. The court also noted that the defendant was 18 years old when he committed these offenses, not 15 years old.

¶ 30    This appeal followed.

¶ 31                                    II. ANALYSIS

¶ 32    Defendant appeals, arguing that (1) his "postconviction petition made a substantial showing of a constitutional violation where he presented evidence that trial counsel was ineffective for not investigating and presenting evidence that the rusty old inoperable gun found in weeds was an antique therefore not a firearm as defined by law"; (2) his "postconviction petition made a substantial showing of a constitutional violation where he asserted that appellate counsel was ineffective for failing to raise on direct appeal the lack of proof that the first, 'silver' gun was not a firearm, and remand is required because postconviction counsel provided unreasonable assistance in failing to appropriately plead necessary facts in support of the assertion that appellate counsel was ineffective for failing to raise on direct appeal the lack of evidence that the second, 'black' gun was a firearm"; and (3) "remand is required because postconviction counsel provided unreasonable assistance by failing to properly allege and support [defendant's] proportionate penalties claim."

¶ 33    We disagree with each of defendant's arguments and affirm.

¶ 34                              A. The Applicable Law

¶ 35                          1. *The Post-Conviction Hearing Act*

¶ 36    The Act provides a procedure for a criminal defendant to assert "in the proceedings

which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2022). The Act sets forth a three-stage process for adjudicating postconviction petitions. *People v. Buffer*, 2019 IL 122327, ¶ 45. At the first stage of postconviction proceedings, the trial court independently reviews the petition and may summarily dismiss it if the petition is frivolous or patently without merit. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). If the petition is not summarily dismissed at the first stage as frivolous or patently without merit, it is advanced to the second stage of the proceedings. *Id.*

¶ 37 At the second stage of postconviction proceedings, the trial court may appoint counsel for an indigent defendant, and the State may file responsive pleadings. *People v. House*, 2021 IL 125124, ¶ 17. The defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35. If the defendant fails to make a substantial showing of a constitutional violation, the court must dismiss the petition; however, if such a showing is made, the petition is advanced to a third-stage evidentiary hearing. *People v. Johnson*, 2018 IL 122227, ¶ 15.

¶ 38 The dismissal of a postconviction petition at the second stage is reviewed *de novo*. *People v. Dupree*, 2018 IL 122307, ¶ 29.

¶ 39 2. *Ineffective Assistance of Counsel Claim*

¶ 40 The right to effective assistance of counsel is guaranteed by the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV). *People v. Alexander*, 2019 IL App (4th) 170425, ¶ 16. Claims alleging ineffective assistance of counsel are analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11. To prevail on an ineffective assistance claim, "a

defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). Deficient performance is established by showing the attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219 (2004). " 'Effective assistance of counsel refers to competent, not perfect representation.' " *Id.* at 220 (quoting *People v. Stewart*, 104 Ill. 2d 463, 491-92 (1984)). Judicial review of counsel's performance is highly deferential. *People v. McGath*, 2017 IL App (4th) 150608, ¶ 38. A defendant establishes the prejudice prong of an ineffective assistance claim by showing that, absent counsel's errors, a reasonable probability exists that the result of the proceeding would have been different. *People v. Hale*, 2013 IL 113140, ¶ 18. A defendant must satisfy both prongs of the *Strickland* test to prevail on a claim of ineffective assistance of counsel. *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 41                    B. Ineffective Assistance of Trial Counsel Claim

¶ 42            Defendant first argues that he was denied his constitutional right to the effective assistance of counsel when his trial counsel failed to object to the application of the firearm sentencing enhancement. Defendant contends that the firearm upon which the State relied for the imposition of the enhancement is not a firearm as defined by law because the firearm, which was admitted into evidence, was a rusty, inoperable weapon that was manufactured before 1898. Defendant argues that this rusty, inoperable gun was found in the weeds the day after he was arrested and did not meet the statutory definition of a firearm.

¶ 43            Defendant cites the definition of "firearm" found in section 1.1 of the Firearm Owners Identification Card Act (FOID Act) (430 ILCS 65/1.1 (West 2010)) and notes that an antique firearm is excluded from the definition of a firearm under the FOID Act if "although designed as a weapon, the Illinois State Police finds by reason of the date of its manufacture, value,

design, and other characteristics [it] is primarily a collector's item and is not likely to be used as a weapon." *Id.* § 1.1(4). Defendant then points to the Illinois Administrative Code for the Illinois State Police that says, in effect, an antique firearm is any firearm manufactured before 1898. 20 Ill. Adm. Code § 1230.10 (2011).

¶ 44 Defendant attached to his postconviction petition photographs of the gun the State introduced into evidence. The photos of the gun and the accompanying literature showed that the gun was a Harrington & Richardson weapon with a barrel marking "HARRINGTON & RICHARDSON ARMS CO. WORCESTER, MASS. USA. PAT'D OCT.4'87," which indicates a weapon manufactured between 1890-1892.

¶ 45 Defendant asserts that his trial counsel should have examined the weapon and argued that it was an antique and that trial counsel's failure to do so constituted ineffective assistance.

¶ 46 The State argues in response that issues that were raised and decided on direct appeal are barred from consideration in a postconviction proceeding by the doctrine of *res judicata*. *People v. Davis*, 2014 IL 115595, ¶ 13. The Illinois Supreme Court in *Davis* also held that issues that could have been raised on direct appeal but were not are considered forfeited and may not be the basis of a postconviction petition. *Id.* The State asserts that in this case, the issue of whether the gun at issue was a firearm has been decided on direct appeal and is *res judicata*. Further, "[t]o the extent alternate arguments concerning this issue were not raised on direct appeal, they are forfeited."

¶ 47 The State also contends that the Act does not allow a defendant to raise a sufficiency of the evidence argument. See *People v. Dunn*, 52 Ill. 2d 400, 402 (1972); see also *People v. Flores*, 2022 IL App (2d) 210757, ¶ 26; *People v. Maxey*, 2025 IL App (4th) 240685-U, ¶ 37. Instead, the

Act is intended to be limited to constitutional claims and does not afford a procedure by which a redetermination of guilt or innocence may be had. *Flores*, 2022 IL App (2d) 210757, ¶ 26; *People v. Creater*, 2022 IL App (4th) 200431-U, ¶ 53.

¶ 48    The State also asserts that defendant's claim that he did not possess a firearm while committing his robberies is a sufficiency of the evidence claim that the appellate court has already rejected. See *Hill*, 2016 IL App (2d) 150793-U, ¶¶ 44-52.

¶ 49    Defendant replies to the State's arguments by asserting that because the State sought to charge defendant with the firearm enhancement penalty in this case, it took on the burden of the " 'increased specificity of proof required.' " (quoting *People v. Clifton*, 2019 IL App (1st) 151967, ¶ 37). Defendant claims that both his trial and appellate counsel were ineffective for failing to raise and argue that the State failed to prove the firearm enhancement charge.

¶ 50    Defendant concedes that the appellate court on direct appeal found that the "inoperable weapon was a firearm for purposes of upholding the armed robbery convictions" but contends that this conclusion is somehow different from—and insufficient for—the determination that the gun in question was a firearm—specifically, that it was not adequate to support the firearm sentencing enhancement. Defendant argues on appeal the following:

> "The claim raised in the postconviction case did not focus on the inoperability of the gun. [Citation.] Rather, the point made on postconviction is that the silver gun is not a firearm as defined by 405 ILCS 65/1.1 because it is an antique, which *is* excluded from the definition of a firearm. [Citation.] The pleadings indicate that the problem is that the state failed to support the enhancement beyond a reasonable doubt." (Emphasis in original.)

¶ 51    We agree with the State's arguments on this issue and reject all of defendant's

contentions.

¶ 52    First, we reject defendant's characterization of the "firearm enhancement provision" as being somehow apart from and different than the statute defining the offense of armed robbery. It is not.

¶ 53    Section 18-2(a)(2) of the Criminal Code (720 ILCS 5/18-2(a)(2) (West 2010)) defines armed robbery as follows: "A person commits armed robbery when he or she violates section 18-1 [(which defines the offense of robbery)]; and *** he or she carries on or about his or her person or is otherwise armed with a firearm." The three counts of armed robbery that charged defendant with that offense all contained the above language from section 18-2(a)(2) of the armed robbery statute.

¶ 54    The trial court at defendant's trial instructed the jury on the definition of armed robbery as follows:

"A person commits the offense of armed robbery when he, or one for whose conduct he is legally responsible, while carrying on or about his person, or is otherwise armed with a firearm, knowingly takes property from the person or presence of another by the use of force or by threatening the imminent use of force."

¶ 55    The State charged defendant with three separate counts of armed robbery, and the issues instructions on each of those counts were identical except for the name of the particular victim of that count. An example of the issues instructions the trial court submitted to the jury is the following:

"To sustain the charge of armed robbery, the State must prove the following propositions:

First Proposition: That the defendant, or one for whose conduct he is legally

responsible, knowingly took property from the person or presence of Melissa Lamb; and

Second Proposition: That the defendant, or one for whose conduct he is legally responsible did so, by the use of force or by threatening the imminent use of force; and

Third Proposition: That the defendant, or one for whose conduct he is legally responsible, carried on or about his person, or was otherwise armed with a firearm at the time of the taking.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 56 The other two issues instructions on armed robbery read the same, except that the names of Terry Herrera and Kathryn Pomerene were substituted for the name Melissa Lamb.

¶ 57 The trial court also instructed the jury on the doctrine of accountability, as follows:

"A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense.

The word 'conduct' includes any criminal act done in furtherance of the

planned and intended act.

"When 2 or more persons engage in a common criminal design or agreement, any acts in furtherance of that common design committed by one party are considered to be the acts of all parties to the common design or agreement and all are equally responsible for the consequences of those further acts. Mere presence at the scene of the crime does not render a person accountable for an offense; a person's presence at the scene of a crime, however, may be considered with other circumstances by you when determining accountability."

¶ 58    We have already stated our agreement with the State regarding its arguments on why defendant's contentions concerning the firearm should be rejected—namely, *res judicata* and an effort by defendant to relitigate in a postconviction proceeding the jury's decision that he was guilty of the offense—but we provide an additional reason for rejecting defendant's argument. As shown by the above instructions, the jury easily could have convicted defendant of these three counts of armed robbery based upon a finding that he was accountable for the conduct of his accomplices with whom these three armed robberies and the attempted armed robbery were committed.

¶ 59    As the State pointed out to the trial court, the three armed robberies and the attempted armed robbery with which defendant and his accomplices were charged occurred within a small area of Rockford, Illinois, and within approximately a 30-minute time period. Although, as defendant argues, some question could conceivably arise regarding whether the silver gun recovered after the robberies could be the basis for a conviction under section 18-2(a)(2) (which contains the firearm enhancement provision), no question exists on this record that defendant or his accomplices were at least armed with a black gun, as described by the witnesses. The close

time frame and the small geographical area of the crime spree of armed robberies and an attempted armed robbery committed by defendant and his accomplices, as well as the multiple witnesses who saw a gun, leaves no doubt that one or all of them "carrie[d] on or about his person or was otherwise armed with a firearm," in the language of section 18-2(a)(2) (*id.*).

¶ 60　　　　　It is important to point out that a conviction for armed robbery involving the firearm enhancement provision under section 18-2(a)(2) may be based upon accountability, as may have occurred in this case. After all, the issues instructions informed the jury that to convict defendant of armed robbery, it had to conclude beyond a reasonable doubt that the State had proved the following third proposition: "That the defendant, *or one for whose conduct he is legally responsible*, carried on or about his person, or was otherwise armed with a firearm at the time of the taking." (Emphasis added.)

¶ 61　　　　　Accordingly, because, on this record, the jury could easily have found defendant accountable for the commission of the armed robberies in this case even if he did not personally carry on or about his person or was not otherwise armed with a firearm at the time of the taking, defendant's claim in his postconviction petition about the silver gun is rendered meaningless. That is because that claim is based upon defendant's *personal* possession of the silver gun, not his accountability for his accomplices.

¶ 62　　　　　The armed robbery statute (720 ILCS 5/18-2 (West 2010)) makes clear that a defendant, like defendant in this case, may be convicted of the firearm enhancement provision based on accountability for his accomplices. This legislative intent is shown by comparing the language of subsection (a)(2), which contains the firearm enhancement provision, with the language in subsections (a)(3) and (a)(4) (*id.* § 18-2(a)(3)-(4)). Each of those later subsections contain an enhancement provision as well, with (a)(3) referring to a firearm being discharged

during the commission of the robbery and (a)(4) referring to a firearm being discharged during the commission of a robbery that proximately causes "great bodily harm, permanent disability, permanent disfigurement, or death to another person." However, for either subsection (a)(3) or (a)(4) to apply, the statute requires that a defendant so charged must have "*personally discharge[d] a firearm*" before he can be convicted under that subsection. (Emphasis added.) *Id.* Subsection (a)(2), however, contains no such requirement. That is, a defendant, as in the present case, can be convicted of armed robbery under subsection (a)(2) *without* personally carrying on or about his person or otherwise being armed with a firearm.

¶ 63    Defendant's initial argument on appeal is that his trial counsel was ineffective "for not investigating and presenting evidence that the rusty old inoperable gun found in weeds was an antique and therefore not a firearm as defined by law." We earlier noted that to prevail on an ineffective assistance claim, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *Petrenko*, 237 Ill. at 496. We reject defendant's argument because, as we have explained, defendant fails to meet either prong of the *Strickland* standard to show that his trial counsel provided ineffective assistance.

¶ 64    C. Ineffective Assistance of Appellate and Postconviction Counsel Claims

¶ 65    Defendant argues his postconviction petition "made a substantial showing of a constitutional violation where he asserted that appellate counsel was ineffective for failing to raise on direct appeal the lack of proof that the first, 'silver' gun was not a firearm, and remand is required because postconviction counsel provided unreasonable assistance in failing to appropriately plead necessary facts in support of the assertion that appellate counsel was ineffective for failing to raise on direct appeal the lack of evidence that the second, 'black' gun was a firearm."

¶ 66     In this argument, defendant is actually raising two separate contentions: the first alleges the ineffective assistance of his appellate counsel, and the second alleges defendant's postconviction counsel provided unreasonable assistance. We address them separately.

¶ 67                    1. *Ineffective Assistance of Appellate Counsel Claim*

¶ 68     Defendant contends that his appellate counsel was ineffective because that counsel should have raised the issue of whether the State met its burden of proof as to the nature of the weapons used in this case. Specifically, defendant maintains that "appellate counsel was ineffective for failing to raise on direct appeal the lack of proof that the first, 'silver' gun was not a firearm." Defendant concedes that appellate counsel raised the claim concerning the silver weapon on direct appeal—namely, its operability—but contends that was insufficient.

¶ 69     We emphatically reject this argument.

¶ 70     Indeed, we are somewhat astonished that counsel on appeal even raised such a claim, given the contents of defendant's brief to this court regarding the evidence of the weapons at trial:

          "The evidence in the record concerning the weapons was vague. Melissa Lamb said one robber put what she believed was a gun to her temple, and she said it was black. [Citation.] Terry Herrera said the gun pointed at her was silver, but she did not 'know guns' and could not describe it further. [Citation.] She thought it may have been a revolver but did not know. [Citation.] Todd Kundert testified he saw a 'black something' that he believed was a gun. [Citations.] He did not know if it was silver or black. [Citation.] Katheryn [*sic*] Pomerene said the item pointed at her was shiny and silver, 'chrome or steel,' but did not know 'what guns are made of.' [Citation.] Chris Toohey said it was 'dark-colored' but did not know if it was

- 28 -

a revolver or an automatic. [Citation. ]Kalo Benjamin testified that [defendant] had a silver gun, and Jemell Johnson also had a gun. [Citation.] In his statement to the police, [defendant] said he had a gun. [Citation.] The state's theory at trial is that [defendant], or someone for whose conduct he was legally responsible, committed the charged acts. [Citation.] The record is clear that [defendant] was charged either as a principle or by accomplice liability. [Citation.]

The record demonstrates that the evidence concerning the weapons was insufficient to demonstrate they were firearms as defined by law."

¶ 71　　　　The cases are legion that hold that the testimony of the victim of an armed robbery that he or she was held up by a person pointing a gun at him or her is sufficient to prove that charge. See, *e.g.*, *People v. Moore*, 2023 IL App (1st) 211421, ¶¶ 72-90 (reviewing Illinois Supreme Court cases holding that eyewitness testimony alone is sufficient to prove the possession of a gun for an armed robbery offense). Yet, defendant's counsel on appeal writes, "It cannot be assumed here that the items Lamb, Herrera, Kundert, Pomerene, Toohey, and Benjamin saw, or was depicted on the surveillance video, fell within the statutory definition of a firearm."

¶ 72　　　　Again, we emphatically reject this claim.

¶ 73　　　　Because we deem defendant's claim in this regard to be completely without merit, we conclude that defendant cannot show either of the requirements necessary to demonstrate the ineffective assistance of his appellate counsel.

¶ 74　　　　2. *Ineffective Assistance of Postconviction Counsel Claim*

¶ 75　　　　Defendant contends that his postconviction counsel failed "to appropriately plead necessary facts in support of the assertion that appellate counsel was ineffective for failing to raise on direct appeal the lack of evidence that the second, 'black' gun was a firearm."

¶ 76        A defendant who is represented by counsel in proceedings under the Act is entitled to "a 'reasonable' level of attorney assistance." *People v. Johnson*, 2018 IL 122227, ¶ 16. Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) sets forth the following duties postconviction counsel must undertake: (1) consult with the defendant by phone, mail, electronic means, or in person; (2) examine the record as needed to shape the defendant's *pro se* claims; and (3) make any amendments necessary for an adequate presentation of the defendant's *pro se* claims. *People v. Custer*, 2019 IL 123339, ¶ 32. The duty to make necessary amendments includes a duty to shape any *meritorious* claim into proper form. See *People v. Addison*, 2023 IL 127119, ¶ 26 (stating that when postconviction counsel determined a claim was meritorious, counsel had a duty to shape it into proper form). It follows that counsel must include any meritorious claim in the amended petition. But counsel has no duty to advance a frivolous claim and indeed may be ethically prohibited from doing so. *People v Urzua*, 2023 IL 127789, ¶ 37.

¶ 77        Compliance with Rule 651(c) is mandatory. *Addison*, 2023 IL 127119, ¶ 21. A proper certificate of compliance from postconviction counsel creates a rebuttable presumption of reasonable assistance. *Id.* The defendant bears the burden of rebutting the presumption of reasonable assistance by showing postconviction counsel did not substantially comply with the requirements of the rule. *Id.* We review *de novo* whether postconviction counsel complied with Rule 651(c). *People v. Mason*, 2016 IL App (4th) 140517, ¶ 19.

¶ 78        We have already rejected defendant's claim that his appellate counsel was ineffective for his alleged failure "to have raised a meritorious issue concerning whether the state met its burden of proof as to the nature of the weapons" involved in this case. Accordingly, there can be no merit to defendant's claim that his postconviction counsel did *not* provide reasonable assistance because that counsel failed to appropriately plead facts necessary to support the

assertion that appellate counsel was ineffective for failing to raise on direct appeal the lack of evidence that the second, "black" gun was a firearm.

¶ 79                    D. Defendant's Claim That Remand Is Required

¶ 80        Last, defendant claims that "remand is required because postconviction counsel provided unreasonable assistance by failing to properly allege and support [defendant's] proportionate penalty claim." We disagree.

¶ 81        Citing *People v. Landa*, 2020 IL App (1st) 170851, ¶ 46, defendant acknowledges that a certificate of compliance creates a rebuttable presumption that counsel has fulfilled the duties imposed by the rule. However, defendant contends that counsel's certificate is not conclusive proof of compliance but may be rebutted by the record. See *People v. Perkins*, 229 Ill. 2d 34, 52 (2007).

¶ 82        In support of defendant's claim that his postconviction counsel did not provide reasonable assistance, defendant cites *People v. Suarez*, 224 Ill. 2d 37, 51 (2007), in which the supreme court wrote the following:

> "Our analysis [of the defendant's claim that his postconviction counsel did not provide reasonable assistance] does not depend upon whether the *pro se* or supplemental petitions in this case did or did not contain potentially meritorious issues. Our Rule 651(c) analysis has been driven, not by whether a particular defendant's claim is potentially meritorious, but by the conviction that where postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the Act cannot be fully realized."

¶ 83        The decision in *Suarez* provides minimal support for defendant's contentions in this case because in *Suarez*, postconviction counsel never filed a Rule 651(c) certificate of compliance. The issue in *Suarez* was hardly one of the sufficiency of that certificate. *Id.* at 42.

¶ 84    In defendant's brief, he explains his contention before this court as follows:

>    "[Defendant] asserted that his sentence for crimes he was convicted of committing when he was 18 years old violated the proportionate penalties clause because a growing body of law and science had shown that young adults' brains were still developing and they were therefore less culpable and more capable of rehabilitation. At the hearing on the state's motion to dismiss, counsel argued that young individuals, emerging adults, are different, young people are impulsive, and it is not until age 25 that they begin to have more reasoning and control. [Citation.] Counsel pointed out that cases involving *de facto* life sentences were analogous because they point out that youth is not an indicator of how individuals will behave as they age."

¶ 85    Defendant concedes that in the second amended petition, postconviction counsel did plead that defendant was entitled to a new sentencing hearing because the consecutive sentences with the firearm enhancements violated the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution as applied to him. Counsel pleaded that (1) the charged offenses occurred 39 days after defendant turned 18 and (2) the firearm enhancements had been found to violate the proportionate penalties clause of the Illinois Constitution as applied to some juveniles. Nonetheless, defendant argues that postconviction counsel "failed to plead facts and circumstances unique to [defendant] that supported an as-applied challenge, and failed to include evidence to support this claim. This was unreasonable assistance."

¶ 86    When denying defendant's postconviction petition regarding this claim, the trial court cited and relied extensively on the then-recent decision of the Illinois Supreme Court in

*People v. Hilliard*, 2023 IL 128186. In the trial court's remarks at the hearing denying defendant's petition, the court stated the following:

> "[In *Hilliard*, the] circuit court found that the aggravated battery with a firearm merged into the charge of attempted first degree murder, for which it sentenced defendant to 15 years' imprisonment. The circuit court then stated on the proven allegation of personally discharging a firearm that proximately caused bodily harm to a person: The minimum on that is 25 years; is that correct, State? The prosecutor answered yes, in the affirmative. The circuit court stated it was sentencing the defendant to a maximum of 25 years for the firearm enhancements.
>
> Here we don't have 25 years. We have a 15-year enhancement. So question is, does the 15, 20, 25—does that apply to this defendant because of his age at 18 at the time of the commission of the offense.
>
> * * *
>
> *** [T]he Illinois Supreme Court goes into a discussion. The proportionate penalties clause states all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the defendant to useful citizenship. A statute violates the proportionate penalties clause if *** the penalty is *** solely disproportionate to the offense as to shock the moral sense of the community. ***
>
> Defendant challenges the enhancement under [this] standard. Punishments satisfying the standard have not been delineated because as our society evolves, so too do our concepts of elementary decency and fairness that shape the moral sense of the community.

I think it's clear by the cases cited by the court this defendant was not 15 years of age at the time he committed the offense—the offenses, I should say. [Defendant] was 18 years old at the time. And at the sentencing hearing the prosecution proved up two additional armed robberies that occurred before September 15th: August 24th and August 27th of 2011. I went through my notes on that.

Regarding the defendant's second amended post-conviction petition, the Court finds that the petitioner has failed to make a substantial showing of a constitutional violation. And respectfully, the State's motion to dismiss the second amended post-conviction petition is hereby heard and granted."

¶ 87    In his brief to this court, defendant concedes that much of what is known about him was contained in the lengthy presentence investigation report, along with testimony that was presented at the sentencing hearing. We need not set forth all that evidence here except to note that it was extensive. Nonetheless, defendant claims the record contains "significant indications that postconviction counsel failed to comply with Rule 651(c), which rebuts the presumption of reasonable assistance created by his filing of a facially compliant Rule 651(c) certificate."

¶ 88    However, as argued by the State,

"[D]efendant makes this claim without providing any evidence, or even suggesting what additional evidence exists that was not already included or previously known by the sentencing court. Counsel has no duty to fabricate evidence. In the absence of proof that additional evidence exists, defendant cannot show his [postconviction] counsel was unreasonable in failing to allege it. The existence of additional

evidence can not be simply assumed. The State maintains defendant received reasonable assistance and the proportionate penalty issue has no merit."

¶ 89        We agree with the State.

¶ 90        In support of its argument, the State cites *People v. Spreitzer*, 143 Ill. 2d 210, 221 (1991), in which the supreme court wrote the following: " 'Where there is not a showing that sufficient facts or evidence exists, inadequate representation certainly will not be found because of an attorney's failure to amend a petition or, when amended, failing to make the petition's allegations factually sufficient to require the granting of relief.' " (quoting *People v. Stovall*, 47 Ill. 2d 42, 46 (1970)).

¶ 91        We agree that what the supreme court wrote in *Spreitzer* is still good law and that it applies to this case. As a result, the rebuttable presumption that postconviction counsel provided reasonable assistance of counsel, as shown by the Rule 651(c) certificate he filed, is not rebutted by this record. Defendant has provided nothing to support his contention that his postconviction counsel failed to provide information available to counsel in support of defendant's petition or that such evidence even exists. Accordingly, we reject the claim that defendant's postconviction counsel did not provide reasonable assistance.

¶ 92                            III. CONCLUSION

¶ 93        For the reasons stated, we affirm the trial court's judgment.

¶ 94        Affirmed.